UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

vs.                                    Case No: 8:13-cr-115-T-30TBM

CHARLIE VERNON, JR.
_____/

O R D E R

Before the Court are Defendant's Motion to Suppress, Request for Hearing and Memorandum of Law (D-11), Defendant's Supplemental Motion to Suppress, Request for Evidentiary Hearing and Memorandum of Law in Support (D-17), and the Government's response to Defendant's Motion to Suppress (D-20). The Court held a hearing on the motions on April 22, 2013. At the hearing, the parties presented argument as to both motions, and testimony was presented with regard to Defendant's supplemental motion.

By way of background, Defendant is charged in a three-count Indictment with possession with intent to distribute and to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2, and being a felon-in-possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e), and 2. Trial is scheduled to commence on May 20, 2013.

In his original motion, Defendant moves to suppress all evidence obtained as a result of search of the residence located at 2103 State Street West, Tampa, Florida, as well as any statements obtained subsequent to the search and seizure as fruit of the poisonous tree. In his supplemental motion, Defendant contends his waiver of his Miranda rights was involuntary and therefore moves to suppress any statements he made.

Tampa Police Department Officers Daniel Klotzbach and Nicholas Baez swore to an affidavit on January 31, 2013 asserting that there was reason to believe that marijuana and cocaine were being kept "on" and/or "at or within premises" located at 2103 State Street West in violation of Florida State Statute 893.13. According to the affidavit, the week of January 6, 2013, the officers received an anonymous complaint that traffic was coming and going from the residence on a daily basis. The complainant stated he had witnessed drug transactions take place at the residence. The officers conducted surveillance on the residence and observed a "large amount of pedestrian and vehicle traffic coming to and from the residence," as well as several subjects coming to the residence, meeting with another subject in the driveway, and then leaving after one to three minutes. The officers encountered two subjects leaving the area and computer checks revealed them both to have narcotics history. Based on their training and experience, the officers believed the activity was consistent with narcotic

activity/narcotic sales.

The week of January 13, 2013, the officers conducted two trash pulls. The contents of the trash container from the first pull included: (1) five clear sandwich baggies with marijuana residue; (2) three blunts with marijuana residue; (3) marijuana stems; (4) clear sandwich baggies with cocaine residue; and (5) mail addressed to Len Vernon, Sr. of 2103 State Street West. The items tested positive for cocaine and marijuana.

The second trash pull located the following items: (1) one clear plastic sandwich baggie with marijuana residue; (2) one blunt with marijuana residue; (3) a Newport cigarette box with marijuana residue; (4) a receipt with handwritten name Charles Vernon; and (5) mail addressed to Charlie Vernon of 2103 State Street West. The items tested positive for marijuana. A records check revealed Charlie Vernon, Jr. to be a resident of 2103 State Street West. Tampa Electric confirmed service for the residence had been in the name of Charlie Vernon for approximately two years.

The search warrant was issued on January 31, 2013 by Judge Scott Farr. The warrant permitted search of the premises and curtilage as well as any persons found thereon. On February 1, 2013, law enforcement executed the warrant at 2103 State Street West, Tampa, Florida. Defendant, his elderly mother, and two others were outside the house in the carport area. Defendant and two others were handcuffed. After being read his rights, Defendant

admitted that all the illegal controlled substances and firearms in the residence belonged to him.

A search of the house and the Defendant revealed 107.1 grams of cocaine and 53.3 grams of marijuana. Additionally, $2871.00 in cash, various drug using paraphernalia and four firearms (Colt model 1911 .45 caliber semi-automatic pistol (SN367251), a Taurus .38 caliber revolver, a Raven Arms Model MP-25 .25 caliber pistol (SN 1201036) and a SKS 7.62 rifle (SN 22026748)) and over 800 rounds of ammunition were seized.

I. **Defendant's Motion to Suppress**

In his original motion, Defendant contends that there was not probable cause to believe that contraband would be found in the residence because the affidavit did not include statements regarding subjects entering and leaving the residence. He further argues the trash pulls did not provide sufficient corroboration to support a determination of probable cause that narcotics would be found in the house. He also claims the information was stale. Finally, he contends the good faith exception does not apply because the officers could not have harbored an objectively reasonable belief in the existence of probable cause. He contends that if the search and seizure was unlawful then his statements are fruit of the poisonous tree.

Defendant did not assert in his motion that the affidavit supporting the search warrant contained misrepresentations or

omissions that were knowingly and recklessly made. Rather, Defendant asserts that the information in the warrant was not sufficient to support a finding of probable cause. As such, an evidentiary hearing on the original motion to suppress was not necessary. See United States v. Perez, 661 F.3d 568, 581 n. 18 (11th Cir. 2011) (citing Franks v. Delaware, 438 U.S. 154 (1978)), cert. denied, 133 S.Ct. 355 (2012).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Mitchell, Case No. 12-11945, --- Fed.Appx. ----, 2013 WL 104834, at * 3 (11th Cir. Jan. 8, 2013) (per curiam) (citation omitted). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002).

The Eleventh Circuit has upheld a finding that the search warrant affidavit established probable cause to search a residence where law enforcement: (1) received a tip that the suspect was involved in a drug-related shooting; (2) conducted two trash pulls each producing drugs and drug-related evidence; and (3) the suspect

5

had previous drug arrests. Mitchell, 2013 WL 104834, at *3.

Similarly, the search warrant affidavit in this case established probable cause that drug-related evidence would be found at the 2103 State Street West residence. Specifically, the anonymous complaint regarding drug trafficking transactions at the residence coupled with the evidence from surveillance conducted by law enforcement and the two trash pulls established a fair probability that evidence of illicit drug activity would be found at the residence. Furthermore, the affidavit established a sufficient link between Defendant, the drug evidence, and the residence. In this regard, mail addressed to Defendant at the residence's street address was found in the trash along with drug evidence and the electricity bill was in Defendant's name.

Defendant argues that the information in the affidavit was stale and therefore does not support a finding of probable cause. In support of his contention, Defendant cites United States v. Bennett, No. 08-CR-192, 2008 WL 4682665 (E.D. Wis. Sept. 22, 2008), wherein the court found that evidence of a trace amount of marijuana found during a trash pull conducted at least six days before law enforcement obtained a search warrant was stale and did not support a finding of probable cause to search the residence.

There is no fixed time limit for when information becomes stale. In determining whether information in an affidavit presented in support of a warrant is stale, the court considers:

(1) the length of time between when the information was obtained and when the search warrant is executed; (2) the nature of the suspected crime; (3) the habits of the accused; (4) the character of the items sought; and (5) the nature and function of the premises to be searched. United States v. Bervaldi, 226 F.3d 1256, 1264, 1265 (11th Cir. 2000).

Bennett is not binding on this Court, nor does the Court find it persuasive. The Eleventh Circuit has repeatedly rejected staleness arguments involving information much older than six days. United States v. Johnson, 290 Fed. Appx. 214 (11th Cir. 2008) (per curiam) (finding two to three week old information not stale); United States v. Roundtree, 299 Fed. Appx. 905, 907 (11th Cir. 2008) (per curiam) (information not stale when warrant obtained four days after last time law enforcement observed defendant and was executed eight days after it was obtained); Bervaldi, 226 F.3d 1256, 1264-67 (11th Cir. 2006) (finding six month old information not stale).

Here, law enforcement conducted surveillance the week of January 6, 2013. It conducted two trash pulls on January 15, 2013 and January 18, 2013. The warrant was obtained less than two weeks later and executed on February 1, 2013, 14 days after the last pull. Given the ongoing nature of drug trafficking, the fact that the electricity had been in Defendant's name for approximately two years, and the time frame in which the information and subsequent

7

warrant were obtained and executed, the Court finds the information was not stale.

Even assuming arguendo the affidavit was insufficient to support a finding of probable cause, the Court would find that law enforcement acted in good faith. The good faith exception to the exclusionary rule under <u>United States v. Leon</u>, 468 U.S. 897 (1984) applies except in four circumstances:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid.

<u>United States v. Robinson</u>, 336 F.3d 1293, 1296 (11th Cir. 2003).

None of the foregoing circumstances exist in this case. There is no allegation that the affiants mislead the issuing judge with false information or information they would have known to be false except for their reckless disregard of the truth. The issuing judge did not abandon his judicial role. The warrant is not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Nor was the warrant so facially deficient that the executing officers could not presume it to be valid. Defendant's motion to suppress is therefore denied.

## II. Defendant's Supplemental Motion to Suppress

In his supplemental motion, Defendant states that he was intoxicated at the time his Miranda warning was read and as such did not have the requisite level of comprehension to voluntarily relinquish his Miranda rights. Defendant also argues that "the show of force and intimidation" by law enforcement coupled with his intoxication renders his waiver of his Miranda rights invalid.[1] The Court held an evidentiary hearing on this motion on April 22, 2013. Defendant presented the testimony of Lindsay Doss. The Government presented the testimony of Officer Daniel Klotzbach.

### Testimony Presented at the Hearing

Lindsay Doss is a nurse at the Hillsborough County Jail for approximately six months. Prior to working at the jail, she worked in pediatrics for approximately ten months. Doss testified that her experience with determining whether someone is intoxicated was limited to the training she received in licensed practical nursing school and her time working at the jail. Doss testified that she interviewed Defendant on February 1, 2013, at approximately 10:05 p.m., after Defendant had been accepted into the jail by Nurse

---

[1] The March 13, 2013 Pretrial Discovery Order directs that motions to suppress be filed no later than 21 days from the date of the order, absent good cause or as otherwise permitted by the trial judge. (D-10, p. 4, ¶ F.) Any motions to suppress should have been filed by April 3, 2013. Defendant's supplemental motion was filed on April 16, 2013, without leave of Court. Defense counsel did not show any good cause for the late filing. The Government, however, did not object to the untimely filing. Regardless, the Court finds it would be in the interests of justice to address the supplemental motion on the merits.

9

Karen Hazelbaker. Doss testified that the jail records reflect that Defendant told her he had last consumed two pints of alcohol at 8:00 a.m. that day. Doss testified that she indicated "yes" on the Inmate Medical Screening form as to "sign of being under an influence of alcohol/drugs." She, however, admitted that she failed to include any notes in the comment section that he seemed intoxicated or what led her to believe that he was intoxicated. Doss agreed that she should have included such information. She confirmed her notes indicated Defendant asked for a flu vaccine.

Daniel Klotzbach, a TPD Officer assigned to the Rapid Offender Control Squad testified that upon law enforcement's initial approach of the residence a flash bang device was used as well as an armored vehicle and approximately one dozen officers in raid gear. Officer Klotzbach explained that he was not wearing the raid gear and that the geared up officer left after approximately 15 minutes.

Officer Klotzbach interviewed Defendant at the residence on February 1 2013, at about 5:00 p.m. Klotzbach found Defendant handcuffed and sitting on a bench on the porch. According to Officer Klotzbach, Defendant had no problem walking to another area in the yard for the interview. Klotzbach inquired of Defendant whether he had ever had his Miranda rights read before and Defendant responded in the affirmative. Klotzbach then read Defendant his Miranda rights from a preprinted card and asked

10

Defendant whether he understood his rights to which Defendant responded, "yes." Defendant responded in the affirmative that he would make a statement.

Officer Klotzbach described Defendant as calm and appearing to understand him. Officer Klotzbach testified that Defendant did not appear to be under the influence of drugs or alcohol and that Klotzbach did not smell alcohol on Defendant's breath. Defendant did not ask Klotzbach to repeat himself and responded appropriately to questions. Officer Klotzbach recalled Defendant's speech was normal and his eyes were not glassy.

Defendant told Officer Klotzbach that all the contraband was his and made clear that it did not belong to his mother. Defendant took Klotzbach to a bedroom in the residence to show him where the drugs and guns were stored.

Officer Klotzbach observed Defendant over a period of three hours before Defendant was transferred to the jail and nothing about Defendant's demeanor led Klotzbach to believe he was under the influence. Klotzbach testified that while he had never done a DUI arrest, he received training on the signs of intoxication and had on occasions in the past called an ambulance for intoxicated suspects for their safety.

### The Court's Credibility Findings

After hearing the testimony of the witnesses, and taking into account the witnesses' interests in the outcome of these

proceedings, the Court fully credits the testimony of Officer Klotzbach.

Officer Klotzbach appeared credible. He is an experienced law enforcement officer and has been with the Tampa Police Department for five years. He has had training on the signs of intoxication and has had prior incidents where he felt an arrestee's intoxication made it necessary to call an ambulance. Further, Officer Klotzbach was able to assess Defendant over a period of several hours.

On the other hand, there was no indication that Ms. Doss had any personal recollection of Defendant or his medical screening. While the medical screening form indicated "Y" to "signs of being under the influence of alcohol/drugs," the other medical forms she completed include specific signs that made her come to her conclusion. Furthermore, her conclusion is not supported by Nurse Hazelbaker's note which reflect Defendant could walk without assistance and demonstrated doing so.

Having assessed the credibility of the witnesses, the Court now turns to the issues presented in Defendant's Motion.

### Discussion

Before beginning a custodial interrogation, the subject must be warned by law enforcement of the following: (1) his right to remain silent; (2) that statements can and will be used against him in a court of law; (3) his right to have an attorney present during

questioning; and (4) that if he cannot afford an attorney one will be appointed. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). A waiver of Miranda rights must be knowing, intelligent and voluntary. Id. at 1612. There is a two-part inquiry to determine whether a waiver of Miranda is valid: (1) "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The court considers the totality of the circumstances in determining whether a defendant has knowingly and voluntarily waived his Miranda rights. United States v. Barbour, 70 F.3d 580, 584-85 (11th Cir.1995). It is the Government's burden of proving by a preponderance of the evidence that Defendant validly waived his Miranda rights. United States v. Chirinos, 112 F.3d 1089, 1102 (11th Cir. 1997).

The Court finds that Defendant was read his Miranda rights by Officer Klotzbach and that Defendant indicated that he understood those rights and agreed to speak with Officer Klotzbach. The Court further finds that Defendant voluntarily waived his Miranda rights. In this regard, Officer Klotzbach testified that Defendant was calm. After the residence and the occupants were secure, no one yelled at Defendant or brandished a weapon. Officer Klotzbach

testified neither he nor any other law enforcement officer coerced or threatened Defendant to make a statement. Moreover, Defendant answered in the negative when Officer Klotzbach asked him whether anyone had threatened him or coerced him into making a statement.

While Defendant did not execute a written waiver, the Court finds Defendant knowingly and intelligently waived his Miranda rights. Officer Klotzbach was able to observe Defendant for over three hours. During that time, Defendant acted calm, was able to converse with law enforcement, understand and give coherent responses to questions, and walk without assistance. Before being read his rights, Defendant affirmatively acknowledged that he was familiar with his Miranda rights as he had been read them in the past. In short, there was nothing about his behavior that led Officer Klotzbach to believe Defendant was under the influence of drugs and/or alcohol.

The Court therefore finds that the Government has demonstrated by a preponderance of the evidence that Defendant understood his Miranda rights and made a free, rational and deliberate choice to waive the rights and give an interview. The supplemental motion to suppress Defendant's statements is therefore denied.

IT IS ORDERED that:

1) Defendant's Motion to Suppress, Request for Hearing and Memorandum of Law (D-11) is DENIED.

2) Defendant's Supplemental Motion to Suppress (D-17-1) is

DENIED. The Request for Evidentiary Hearing (D-17-2) is GRANTED nunc pro tunc.

DONE AND ORDERED in Tampa, Florida, this 26th day of April, 2013.

*[signature]*
WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE